IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ECN FINANCIAL LLC, | : | |
|     *Plaintiff*, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | NO. 2:17-cv-02760-CDJ |
| GALMOR'S/G&G STEAM SERVICES, INC. | : | |
| and STEVE GALMOR, | : | |
|     *Defendants/Third-Party Plaintiffs*. | : | |
| | : | |
| v. | : | |
| | : | |
| TOTAL EQUIPMENT AND RENTAL, LLC | : | |
| d/b/a BOBCAT OF OKLAHOMA CITY, | : | |
|     *Third-Party Defendant*. | : | |

**Jones, II    J.**                                                                        **August 1, 2018**

**MEMORANDUM**

Plaintiff ECN Financial, LLC ("ECN") brings the present action against Defendant Galmor's/G&G Steam Services, Inc. and Steve Galmor (collectively, "G&G") alleging liability for the balance due on a loan between the parties. (ECF No. 1, Ex. A.) Thereafter, G&G impleaded Third-Party Defendant Total Equipment and Rental, LLC d/b/a Bobcat of Oklahoma City ("Total Equipment"), alleging breach of contract and warranty for the equipment G&G purchased with the loan ECN provided. (ECF No. 4 ¶ 25.)

Presently before the Court is Total Equipment's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), (2) and (6) and 28 U.S.C. § 1367(c)(2), or, in the Alternative, to Strike the Third-Party Complaint pursuant to Federal Rule of Civil Procedure 14(a)(4) or Federal Rule of Civil Procedure 8(a)(2), (ECF No. 9.), and responses thereto. For the reasons set forth in this memorandum, this Court denies Third-Party Defendant's Motion to Dismiss.

## PROCEDURAL BACKGROUND

ECN filed its Complaint on April 4, 2017 in the Montgomery County Court of Common Pleas, seeking $270,984.53 in damages from G&G for the unpaid balance on the loan ECN provided. (ECF No. 1, ¶¶ 1, 13, 15.) On June 19, 2017, G&G timely removed the matter to this Court based on diversity of citizenship, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (ECF No. 1, ¶¶ 7, 9-12.)

On June 27, 2017, G&G filed an Answer, alleging that ECN's Complaint failed to add a necessary and indispensable third-party, Total Equipment, to the lawsuit. (ECF No. 3, ¶ 23.)

Thereafter, on July 11, 2017, G&G filed a Complaint to Join Total Equipment as Third-Party Defendant, pursuant to Fed. R. Civ. P. 14(a). (ECF No. 4.)

On September 11, 2017 Total Equipment filed a Motion to Dismiss or, in the Alternative, to Strike the Third-Party Complaint. (ECF No. 9.) On October 2, 2017, G&G filed a Response in Opposition to Total Equipment's Motion to Dismiss or, in the Alternative, to Strike the Third-Party Complaint. (ECF No. 14.) Finally, on October 26, 2017, Total Equipment filed their Reply to G&G's Response. (ECF No. 17.)

## FACTUAL ALLEGATIONS

ECN is a Delaware Limited Liability Company headquartered in Montgomery County, Pennsylvania (ECF No. 1, p. 7). ECN is in the business of providing business equipment loans. (ECF No. 1, Ex. A.) G&G is an Oklahoma corporation with a primary place of business in Elk City, Oklahoma, (ECF No. 1, Ex. A ¶ 3), and an office in Shamrock, Texas. (ECF No. 9, Ex. 1 ¶ 20.) Total Equipment is also an Oklahoma corporation with a primary place of business in Oklahoma City, Oklahoma. (ECF No. 4, ¶ 2.)

In late 2014, G&G was interested in purchasing equipment for commercial purposes. (ECF No. 4, ¶ 7.) G&G discussed their interest with Total Equipment, who recommended a Doosan DA 40 articulated dump truck ("Doosan"). (ECF No. 4, ¶ 8.) As part of said purchase, Total Equipment agreed to open a repair facility in Elk City, Oklahoma to service the Doosan, (ECF No. 4, ¶ 9), and provide G&G with substitute "loaner" equipment in the event said Doosan ever needed repairs. (ECF No. 4, ¶ 10.) Additionally, Total Equipment provided a 2,000 hour service agreement, a three year/5,000 hour power train warranty, and a 15,000 hour frame, Arctic Hinge, and Tandem Housing warranty. (ECF No. 4, Ex. C.)

G&G purchased the Doosan from Total Equipment for $460,404.43 on December 18, 2014. (ECF No. 9, Ex. 1 ¶ 19.) To finance the purchase, ECN provided G&G with a loan. (ECF No. 4, ¶ 1.) ECN and G&G signed a Promissory Note, Security Agreement and Personal Guaranty (collectively, "the loan"), which secured the purchase of the Doosan. (ECF No. 1, Ex. A ¶¶ 5-6.) Total Equipment did not sign any documents related to the loan, and did not reserve the right to receive payments directly from G&G on the loan. (ECF No. 1, Ex. A.) The loan contained a forum selection clause, which states that G&G and ECN consent to Pennsylvania jurisdiction for any disputes arising under the loan. (ECF No. 1, Ex. A.)

G&G agreed to make six monthly payments of $13,000, followed by fifty four monthly payments of $7,265.06 under the loan. (ECF No. 1, Ex. A ¶ 7.) G&G made the first twenty three monthly payments, (ECF No. 1, Ex. A ¶ 9), until the time, in which G&G alleges, Total Equipment breached the warranties and agreements related to the Doosan purchase. (ECF No. 4.) Specifically, G&G alleges that Total Equipment only opened a repair facility for one week before closing and vacating said facility, (ECF No. 4, ¶ 14), did not make any loaner equipment available when its Doosan needed repairs, (ECF No. 4, ¶ 15), and failed to make repairs covered

3

under the warranties Total Equipment provided. (ECF No. 4, ¶ 17.) G&G further alleges that Total Equipment's breaches rendered the Doosan "essentially useless and valueless." (ECF No. 4, ¶19.) G&G repeatedly requested Total Equipment repair the Doosan, but Total Equipment refused. (ECF No. 4, ¶ 17.) Due to the Doosan's defective condition and Total Equipment's inadequate service, G&G withheld payments on its loan, (ECF No. 4, ¶ 20), and has not made a loan payment since January 2017. (ECF No. 4, Ex. A ¶ 9.)

On June 28, 2017, following their default on the loan, G&G received notice of ECN's plans to repossess and sell the Doosan to mitigate their financial loss, in compliance with the Uniform Commercial Code. (ECF No. 4, ¶ 22-23.) However, ECN's re-sale did not cover G&G's remaining indebtedness on the loan, (ECF No. 4, Ex. E), and therefore ECN alleges G&G is still liable for the remaining balance. (ECF No. 1, Ex. A ¶¶ 13, 15; ECF No. 4, ¶ 24.) G&G's Complaint to Join alleges that any of G&G's indebtedness on the remaining loan is a direct result of Total Equipment's breaches of the warranties and agreements related to the Doosan purchase. (ECF No. 4, ¶ 25.) Specifically, G&G alleges that the Doosan had been devalued by Total Equipment's "multiple failures," to provide functioning equipment and make necessary repairs, (ECF No. 14, p. 12), and that Total Equipment is liable to G&G for any amount due to ECN "to the extent that the amount recovered at the repossession sale is less than what would have been recovered had the equipment not been defective and unrepaired." (ECF No. 14, p. 12.) G&G further alleges that Total Equipment's liability to ECN should also include "any amount that ECN [spent] to repair the equipment," prior to the re-sale. (ECF No. 14, p. 13).

G&G does not contest their consent to Pennsylvania jurisdiction in the forum selection clause within the loan. However, Total Equipment, as a non-signatory to the loan, denies any

consent to Pennsylvania jurisdiction, and seeks to dismiss all claims G&G made against them in this Court related to the Doosan sale. (ECF No. 9.)

**STANDARDS OF REVIEW**

 A. **Rule 12(b)(1) Standard of Review**

A challenge to subject matter jurisdiction under Rule 12(b)(1) may take two forms: a facial challenge or a factual challenge. If a facial challenge concerns an alleged pleading deficiency, and the trial court is restricted to a review of the allegations of the complaint and any documents referenced therein. *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008); *Gould Elec. Inc. v. United States*, 220 F.3d 169, 177 (3d Cir. 2000). When considering a facial challenge, "the trial court must consider the allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

A factual challenge "concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *CNA*, 535 F.3d at 139 (internal quotation, citation, and alterations omitted). If the challenge before the trial court is a factual challenge, the court does not accord any presumption of truth to the allegations in the plaintiff's complaint, and the plaintiff bears the burden of proving subject-matter jurisdiction. *Id.* With a factual challenge, the court may weigh evidence outside the pleadings and make factual findings related to the issue of jurisdiction. *Id.*; *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Mortensen*, 549 F.2d at 891.

 B. **Rule 12(b)(6) Standard of Review**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and

5

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted). After the Supreme Court's decision in *Bell Atl. Corp. v. Twombly*, [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. 544, 555 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556). This standard asks for more than a sheer possibility that a defendant has acted unlawfully. *Id. Accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).

## DISCUSSION

In its Motion to Dismiss, Third-Party Defendant makes a bevy of arguments, each of which this Court considers herein. Total Equipment argues that this Court lacks personal jurisdiction. (ECF No. 9-1, p.6.) Total Equipment argues that there is no basis for subject-matter jurisdiction over the Third-Party Complaint, (ECF No. 9-1, p.12.), and that this Court should decline supplemental jurisdiction because the third-party claim "substantially predominates" over the claims in the original Complaint. (ECF No. 9-1, p.15.) Finally, Total Equipment argues that the Third-Party Complaint should be dismissed for failure to state a claim, (ECF No. 19.), dismissed as improper under Rule 14, (ECF No. 9-1, p.25.), and dismissed for lack of the specificity required by Rule 8. (ECF No. 9-1, p.26.) This Court will address each argument in turn.

I.  THIS COURT HAS SUBJECT MATTER JURISDICTION OVER G&G's CROSS-CLAIMS AGAINST TOTAL EQUIPMENT.

In its Motion, Total Equipment asserts that this Court lacks subject matter jurisdiction over G&G's cross-claims for three reasons. First, Total Equipment characterizes the loan agreement and the Doosan purchase as two completely separate transactions that do not share a common nucleus of operative fact. (ECF No. 9, p. 20.) Second, Total Equipment asserts that this Court cannot exercise jurisdiction over G&G's cross-claims because G&G and Total Equipment are both Oklahoma corporations, and therefore, non-diverse. (ECF No. 17, p. 10.) Third, Total Equipment avers that G&G's cross-claims would substantially predominate over ECN's claims, and therefore this Court cannot exercise subject matter jurisdiction under 28 U.S.C. 1367(c)(2). (ECF No. 9, p. 24.) For the reasons set forth below, this Court denies Total Equipment's motion. Based on these grounds, this Court has Subject Matter Jurisdiction G&G's cross-claim against Total Equipment.

A.  **The Doosan Purchase is the Common Nucleus of Operative Fact that Gives Rise to Both ECN's Original Claim and G&G's Cross-Claim.**

Federal Courts may exercise supplemental jurisdiction over claims that could not otherwise come before the Court where said claims arise out of the same case or controversy. 28 U.S.C. § 1367(a); *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 308 (3d Cir. 2003), *as amended* (Nov. 14, 2003)(citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725). Exercising jurisdiction over these related claims promotes "judicial economy, convenience and fairness to all litigants." *De Asencio*, 342 F.3d at 308 (citations omitted). Even if the *legal elements* of a claim differ, they may still share a common nucleus of operative *fact*. *Cronin v. Citifinancial Services, Inc.*, 352 Fed. Appx. 630, 636 (3d Cir. 2009)(citing *Gibbs*, 383 U.S. at 725)(emphasis added).

G&G asks this Court to exercise supplemental jurisdiction over the causes of action contained in cross-claims against Total Equipment. (ECF No. 4.) By rule, cross-claims are that which arise out of the same transaction or occurrence as the original claim. Fed. R. Civ. P. 13(g). In diversity cases, federal courts may exercise jurisdiction over cross-claims properly filed pursuant to Rule 13(g) because said claims depend, at least in part, upon the resolution of the primary lawsuit. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 376 (1978). The impleader of a third-party defendant involving a non-federal claim is ancillary to the federal claim. *Id.* Properly impleaded cross-claims under Rule 13(g) share "logical dependence," and not just "factual similarity," with the original claim because the third-party defendant is at least partially responsible for bringing about the original claim. *Id.*

Out of fairness to defendants, federal courts will exercise supplemental jurisdiction over a defendant's cross-claims because the plaintiff, not the defendant, chose to bring the claims forward in federal, rather than state, court. *Kroger*, 437 U.S. at 376. Congress did not "intend to confine the jurisdiction of federal courts so inflexibly that they are unable to protect legal rights or effectively… resolve an entire, logically entwined lawsuit." *Id.* at 377.

This Court has supplemental jurisdiction over G&G's cross-claims against Total Equipment because both, the original claims and cross-claims, arise from a common nucleus of operative fact: the Doosan purchase. Without said Doosan purchase, G&G would not have sought a loan with ECN, and G&G would not have conducted business with Total Equipment.

G&G alleges that their decision to stop making loan payments under its agreement, and their subsequent indebtedness to ECN, came about, in part, as a result of Total Equipment's breach of warranties. (ECF No. 4, ¶ 25.) Taking G&G's allegation as true, this Court concludes that G&G's liability under the loan agreement shares logical dependence with G&G's claims

8

against Total Equipment. Total Equipment did not sign any documents related to the loan between G&G and ECN, but G&G's ability and willingness to make payments on the loan for said equipment is arguably dependent on Total Equipment providing functional equipment, adequate service, and fulfilling promises at the time of the Doosan sale.

Additionally, G&G alleges that the Doosan resale did not cover the remaining amount due on the loan because Total Equipment provided a defective product and failed to make necessary repairs. Accepting G&G's allegations as true, Total Equipment's breach diminished the Doosan's resale value, and ECN's ability to recover following G&G's default.

Total Equipment seeks to characterize the loan agreement and the Doosan purchase as two completely separate transactions. Total Equipment states that the cross-claims and original claims are "factually and legally unrelated." (ECF No. 17, p. 11.) This Court finds said argument especially unconvincing because Total Equipment received payment for the Doosan directly from ECN. (ECF No. 9-2, ¶ 26.) Such a direct transaction between ECN and Total Equipment lends to the conclusion that, despite Total Equipment's allegations to the contrary, the original claims and cross-claim arise from a common transaction, and are therefore related for purposes of subject matter jurisdiction under § 1367(a). For these reasons, and out of fairness to G&G, who ECN brought into federal court, this Court has supplemental jurisdiction over G&G's cross-claims against Total Equipment.

> **B.** **G&G and Total Equipment do not need to have Diversity of Citizenship for this Court to Exercise Supplemental Jurisdiction.**

Total Equipment argues that this Court cannot exercise jurisdiction over G&G's cross-claims because G&G and Total Equipment are not diverse under 28 U.S.C. § 1332. (ECF No. 17, p. 6.) Total Equipment asserts that G&G's cross-claims should be settled in a separate lawsuit

brought forth in Oklahoma state court because G&G and Total Equipment share Oklahoma citizenship.

In cases that originate from diversity under § 1332, courts may exercise supplemental jurisdiction over third-party plaintiff's cross-claims, even when the third-party plaintiff and third-party defendant are not diverse. *See Field v. Volkswagenwerk AG*, 626 F.2d 293, 299 (3d Cir. 1980)("It is well-settled that there need be no independent jurisdictional basis for such a [third-party] claim if diversity of citizenship exists between the original parties").

ECN brought the original claim against G&G to federal court based on diversity under § 1332. ECN is a Delaware Limited Liability Corporation headquartered in Montgomery County, Pennsylvania. Although Total Equipment and G&G both reside in Oklahoma, this Court may still exercise supplemental jurisdiction over G&G's cross-claim because the original parties are diverse.

> **C. G&G's State Law Claims do not Substantially Predominate over the Federal Claims under 28 U.S.C 1367(c) because they Require Similar Proof and Seek a Common Remedy.**

Total Equipment argues that even if the original claims and cross-claims arise from a common nucleus of operative fact, G&G's cross-claims would substantially predominate ECN's claims, and thus, this Court should not exercise jurisdiction over said cross-claims. (ECF No. 9-1, p. 24.)

"Federal courts have the constitutional power to exercise pendent jurisdiction when the state and federal claims derive from a common nucleus of operative fact, such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding, and when the federal claim has sufficient substance to confer subject matter jurisdiction on the court." *Sparks v. Hershey*, 661 F.2d 30, 33 (3d Cir. 1981). (citing *United Mine Workers v. Gibbs*, 383 U.S. 715,

726-27 (1966)). "[I]f it appears that the state issues substantially predominate, whether in terms of [1] proof, of [2] the scope of the issues raised, or of [3] the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice…" *Gibbs,* 383 U.S. at 726. Federal courts do not exercise jurisdiction over state law claims when the state law claim makes up the true "body," of a case, and the federal claim is an "appendage," to that body. *Id.* Even if the state law claims outnumber the federal claims, the state law claims may not substantially predominate for purposes of supplemental jurisdiction. *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995).

Total Equipment characterizes ECN's claims against G&G as simple and G&G's cross-claims as complicated, requiring substantially more proof and seeking a different remedy. (ECF No. 9-1, p. 25.) However, based on the facts presented, it would appear that both ECN's claims against G&G and G&G's cross-claims against Total Equipment require similar proof and seek a similar remedy.

In terms of proof required, it would seem that an inspection of the Doosan's alleged defects is necessary to substantiate both the original claims and cross-claims. For ECN's original claims, ECN conducted a resale of the Doosan to mitigate losses they incurred from G&G's default on the loan. In their Answer, G&G alleges that ECN failed to conduct the Doosan resale in a commercially reasonable manner. (ECF No. 3 ¶ 25.) An examination of the Doosan's condition would determine its value at the time of the resale and whether ECN conducted the sale in a commercially reasonable manner. Furthermore, an examination of the Doosan's defects is also necessary to substantiate ECN's original claims because any defects would limit ECN's ability to recover financially through the resale, and affect the amount ECN seeks in their claim against G&G for damages. For G&G's cross-claims, an examination of the Doosan's alleged

11

defects is necessary because G&G alleges Total Equipment provided a defective product. In terms of remedy sought, both the original claims and cross-claims seek payment on the same outstanding loan balance. For the reasons above, the state law claims in this present action do not predominate the federal claims as both seek the same proof and remedy in regards to their claims.

II.     THIS COURT HAS PERSONAL JURSIDICTION OVER TOTAL EQUIPMENT.

The loan agreement between ECN and G&G contained a forum selection clause, which states that any dispute arising under the loan shall be governed by Pennsylvania law, and settled in Pennsylvania federal or state court. (ECF No. 1, Ex. A.) Total Equipment challenges this Court's jurisdiction over their person; based on the assertion that "Total Equipment of OKC has no connection with Pennsylvania relevant to the claims in the Third-Party Complaint." (ECF No. 9-1, p. 9.) Total Equipment seeks to dismiss any claims against them brought forth in this Court. The analysis that follows shows that, Total Equipment, as a third-party beneficiary of the loan agreement, is bound by the forum selection clause in the loan agreement.

Forum selection clauses are valid unless shown that such enforcement would be unreasonable and unjust, or the result of fraud or overreaching. *Carlyle Inv. Mgt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 218 (3d Cir. 2015). A forum selection clause may be enforced against non-signatory parties closely related to, or receiving a direct benefit from, the contract. *Id.* at 219. To determine whether a non-signatory is closely related to the contract, courts will consider the non-signatory's ownership of the signatory, the relationship between the signatory and non-signatory parties, and whether the non-signatory received a direct benefit from the agreement. *Id.* at 219. In this case, the following will demonstrate that Total Equipment not only

had a relationship with the signatory parties, but Total Equipment also received a benefit from the agreement between ECN and G&G.

Total Equipment essentially avers that it was a not a party in the loan agreement and therefore should not be held to the forum selection clause of said agreement. (ECF No. 9-1, p. 16.) Total Equipment further asserts that they are not a third-party beneficiary to the contract, because they did not have the right to receive payment directly from G&G. (ECF No. 9-1, p. 16.)

A contract need not explicitly mention a third-party by name to recognize them as an intended third-party beneficiary of the contract. *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 168 (3d Cir. 2008). Two criteria must be met to recognize an intended third-party beneficiary to a contract. *Id.* First, recognition of the third-party beneficiary must be "appropriate to effectuate the intentions," of the original parties. Second, the circumstances must indicate that the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary. *Id*. This criteria, set forth in Restatement (Second) of Contracts § 302 (1981), recognized third-party beneficiaries to contracts that did not explicitly state the beneficiary by name, but were formed to benefit the third-party. *Id*.

Total Equipment is bound by the forum selection clause in the loan agreement because they are a third-party beneficiary of the loan. Although Total Equipment did not sign the loan agreement, the Promissory Note Addendum, signed by ECN and G&G, recognizes Total Equipment by name as the equipment provider. (ECF No. 4, Ex. A.) Total Equipment benefitted from the loan agreement because they received $460,404.43 in proceeds from the sale of the Doosan. (ECF No. 4, ¶ 11.) The profits Total Equipment received as a result of this transaction gives this Court reason to conclude that Total Equipment is a third-party beneficiary to the loan agreement, and therefore bound by the forum selection clause.

Recognizing Total Equipment as a third-party beneficiary fits squarely within the criteria set forth in section 302. First, both G&G and ECN entered into the loan with the intention of doing business with Total Equipment, satisfying the requirement that recognizing a third-party beneficiary is "appropriate to effectuate the intentions," of the contracting parties. To further bolster the parties intentions, the payment of the Doosan was effectuated directly between ECN and Total Equipment. (ECF No. 9-2, ¶ 26.) Second, G&G promised to pay ECN for the amount due on the loan. This promise satisfied an obligation of the promisee, ECN, to pay the intended third-party beneficiary, Total Equipment.

In conclusion, G&G took out the loan intending to purchase the Doosan from Total Equipment. As shown above, not only is it clear that Total Equipment had a relationship with the signatory parties of the agreement, but Total Equipment also received a direct benefit from the agreement as receiver of the payment for the Doosan, directly from ECN. As such, the forum selection clause in the loan agreement is valid against Total Equipment, as said party is a third-party beneficiary to the loan agreement.

III.  G&G SUCCESSFULLY STATED A CLAIM FOR BREACH OF WARRANTY, NOT CONTRACTUAL INDEMNITY OR CONTRIBUTION.

Total Equipment asserts that G&G failed to state a claim under Fed. R. Civ. P. 12(b)(6). In its Motion, Total Equipment erroneously states that, in its Complaint to Join, G&G states a claim for indemnity or contribution, both of which cannot provide relief. (ECF No. 9-1, p. 23.) However, Total Equipment did not state a claim for indemnity or contribution; they successfully stated a claim for breach of warranty under Rule 12(b)(6). In G&G's view, Total Equipment's "breach…rendered the equipment valueless or diminished in value to the extent that the disposition of the collateral was insufficient to cover the alleged indebtedness." (ECF No. 4, ¶ 25.) Therefore, to the extent that this Court allows G&G's Third Party Complaint and finds

14

liability against Total Equipment for Breach of Warranty, said liability is relevant to G&G's alleged indebtedness to ECN. This Court agrees.

An express warranty from the seller includes "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." 13 Pa. Stat. and Consol. Stat. Ann. § 2313 (West). Damages for breaches of warranty are measured by "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." 13 Pa. Stat. and Consol. Stat. § 2714.

Breach of warranty, indemnity, and contribution are all separate grounds for relief. In order to hold a third-party liable for indemnification on a breach of contract claim, there must be a provision within the contract, signed by all parties, showing a "clear and unequivocal," intent to indemnify. *Kiewit E. Co., Inc. v. L & R Const. Co., Inc.*, 44 F.3d 1194, 1199 (3d Cir. 1995). The provisions and terms of the contract must clearly show the intent to grant relief from liability. *Gimbel Bros., Inc. v. William H. Vanderherchen, Inc.*, 468 F.2d 597, 599 (3d Cir. 1972). Without a provision that specifies indemnification, a contracting party cannot hold a third-party secondarily liable for unfulfilled contractual obligations. *Id.*

In Pennsylvania, contribution is not available for breach of warranty or contract claims. *EQT Prod. Co. v. Terra Serv., LLC*, 179 F. Supp. 3d 486, 493 (W.D. Pa. 2016)(citing *Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, 552 F.Supp.2d 515, 520 (E.D.Pa.2008)); *Unique Techs., Inc. v. Micro Stamping Corp.*, No. CIV.A. 02–CV–6649, 2003 WL 21652284, at *3 (E.D.Pa. Apr. 15, 2003); *Higgins Erectors & Haulers, Inc. v. E.E. Austin & Son, Inc.*, 714 F.Supp. 756, 759 (W.D.Pa.1989)).

G&G successfully stated a claim for breach of warranty by asserting that Total Equipment provided an express warranty to G&G for the Doosan purchase, which G&G alleges they violated. (ECF No. 4, Ex. C.) Said express warranty includes a 2,000 hour service agreement, three year or 5,000 hour Power Train Warranty, a 15,000 hour frame, Arctic Hinge, and Tandem Housing warranty, and an Early Return Option. (ECF No.4, Ex. C.) G&G alleges in its Complaint to Join that Total Equipment's breach of warranty on the Doosan resulted in G&G's decision to withhold payments to ECN. (ECF No. 4, ¶ 25.) They also allege that Total Equipment's breach decreased the Doosan's value, and therefore the profits from the UCC resale did not cover G&G's remaining financial obligation under the loan. (ECF No. 5, ¶ 26.) G&G took out the loan with the expectation that it would be provided as warranted.

G&G puts forth a claim for breach of warranty and agreements related to the purchase of the Doosan, not for indemnity or contribution. Indemnity would apply only if G&G asserted that Total Equipment was liable to ECN for the remainder of the loan after the Doosan re-sale. Indemnification would also require a written provision in the contract signed by G&G and Total Equipment, expressing a desire to indemnify.

Although they do not allege Total Equipment is secondarily liable for the entire balance due on the loan, taking G&G's allegations as true, said party suffered a financial loss due to Total Equipment's breach. Therefore, it is proper for G&G to seek damages to the extent that they were harmed by Total Equipment's breach of warranty and agreements related to the purchase. Additionally, G&G alleges that the type and timing of the repairs needed to fix the Doosan fit within Total Equipment's warranties.

G&G's Complaint to Join meets the pleading standard for a breach of warranty claim because G&G's factual allegations, accepted as true, entitle them to relief under breach of warranty.

IV.    THE THIRD-PARTY COMPLAINT IS PROPER UNDER RULE 14(A).

Total Equipment alleges that G&G's cross-claims do not fit within the scope of third-party pleadings under Fed. R. Civ. P. 14(a)(4), which states that a defendant may implead a third-party defendant "only when *the third-party's liability is in some way dependent on the outcome of the main claim* or when the third-party is secondarily liable to defendant." *F.D.I.C. v. Bathgate*, 27 F.3d 850, 873 (3d Cir. 1994)(emphasis added). (ECF No. 9-1, p. 32.) Total Equipment asserts that the outcome of G&G's cross-claims does not affect the outcome of ECN's original claim.

The amount in damages that G&G suffered from their breach of warranty claim against Total Equipment depends largely upon G&G's financial liability to ECN under the delinquent loan. G&G does not claim that Total Equipment is secondarily liable to ECN for the remainder of the loan, rather, that G&G suffered damages as a result of Total Equipment's breach of warranty and agreements made during the purchase. Therefore, the outcome of the original claim against G&G influences the extent of damages G&G seeks to recover on the third-party cross-claim. Therefore, G&G properly impleaded Total Equipment as a Third-Party Defendant under Rule 14(a)(4).

V.    G&G's COMPLAINT TO JOIN IS PROPER UNDER RULE 8.

Total Equipment states that G&G's Complaint to Join does not meet the pleading standard set forth in Fed. R. Civ. P. 8(a). (ECF No. 9-1, p. 33.) A pleading that states grounds for relief must contain a short recitation on the grounds for the court's jurisdiction, a short statement

that shows pleader is entitled to relief, and a demand for the relief sought. Fed. R. Civ. P. 8(a). G&G alleges that Total Equipment is a third-party beneficiary to a contract that contains a forum selection clause, which would grant this Court jurisdiction. (ECF No. 4, ¶ 18.) G&G also seeks relief under breach of warranty, a recognized claim, in the amount that they are indebted to ECN after the Doosan re-sale. G&G met the pleading standard set forth in Rule 8(a).

## CONCLUSION

For the above mentioned reasons, Total Equipment's Motion to Dismiss or, in the Alternative, to Strike the Third-Party Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6), 14(a)(4), and 8(a) and § 1367(c)(2) is denied.

BY THE COURT:

*/s/ C. Darnell Jones, II*
C. Darnell Jones, II    J.